UNITED STATES of America Plaintiff

v.

Ramón CORDERO CARABALLO Defendant.

No. CRIM.01–725(HL).

United States District Court, D. Puerto Rico.

Jan. 10, 2002.

144

Joseph C. Laws, Federal Public Defender, San Juan, PR, for defendant.

Timothy S. Vasquez, Assistant U.S. Attorney, San Juan, PR, for plaintiff.

### ORDER SETTING CONDITIONS OF RELEASE

GELPI, United States Magistrate Judge.

The defendant in this case stands indicted (Docket No. 3) for assaulting and attempting to kill with a firearm Special Agent John T. Schwartz of the Drug Enforcement Administration while he was engaged in his official duties, in violation of 18 U.S.C. §§ 111, 924(c) and 1114.

During the incident object of the indictment, defendant himself sustained various gun shot wounds, the most serious to a leg and buttock. As photographs submitted into evidence by the Federal Public Defender grotesquely depict (*see* defendant's Exhibits A, B, C and D), these are no minor flesh wounds. Following this incident, the defendant was admitted to the emergency room at Centro Médico Hospital, where he suffered cardiac arrest, however was resuscitated and a tracheotomy was performed on him. *See* diagnostic of Ramón Cordero Caraballo, appended to order of December 13, 2001 (Docket No. 7); letter of Dr. Felix S. Vilella Suau of December 20, 2001 appended to order of December 21, 2001 (Docket No. 12).

At present, defendant's prognosis is as follows: "(i) partial paraplegia (loss of function of the lower extremities); (ii) left hand loss of function; (iii) huge ulcer at the right low back, with exposure of the pelvis and active infection; (iv) incomplete healing of the previous abdominal surgeries; (v) long healing wounds at the right leg and left thigh; and (vi) healing tracheotomy." *See* December 20 letter of Dr. Vilella Suau (Docket No. 12). On January 8, 2002, Dr. Vilella Suau further informed the Court via letter, made part of the record (*see* Docket No. 15), that although the defendant can be discharged from the hospital as of January 9, he needs intensive physiotherapy and adequate nutrition in order to improve his present condition. Dr. Vilella Suau is also of the opinion that "*it would be better for [defendant] to receive treatment at his home provided adequate professional supervision can be assured.*" If the same is provided, Dr. Vilella Suau further con-

cludes that "there is a good possibility that *he eventually could ambulate with crutches or at least use a wheelchair without assistance.*"

The defendant's severe injuries cannot in any way downplay the fact that during the incident object of the indictment Special Agent Schwartz and his vehicle were impacted by bullets, and Schwartz sustained a bullet wound to his leg. Although the defendant contends that he was unarmed, but rather was a victim, the fact remains, at least for purposes of detention, that the affidavit in support of the criminal complaint filed in this case attests several facts implicating his involvement in the charged offenses. While Special Agent Schwartz was inside his vehicle, the defendant approached him with a handgun in one of his hands. Schwartz proceeded to identify himself to the defendant as a policeman. However, the defendant responded by pointing his handgun at Schwartz, whereupon an exchange of gunfire ensued, wounding both Schwartz and the defendant. *See* Complaint (Docket No. 1). In addition, a grand jury found probable cause to indict the defendant with the charged offenses, which constitute crimes of violence for which the defendant may be detained pending trial under the Bail Reform Act. *See* 18 U.S.C. §§ 3142(b), 3142(f)(1)(A); *United States v. Ploof,* 851 F.2d 7, 9–10 (1st Cir.1988).

Based on the facts proffered at the detention hearing[1], the Court would most likely order the defendant detained on dangerousness grounds. This of course, is premised on the assumption that the defendant be mobile enough to roam in the community. However, as the evidence adduced at the hearing clearly demonstrated, such is not the case here.

In addition to the medical evidence of record, Deputy United States Marshal Arnaldo Rodríguez, who is in charge of the defendant's custodial arrangements, testified as to defendant's physical condition. Deputy Marshal Rodríguez has constantly seen the defendant since he was arrested and placed under the custody of the Marshal Service. During said time Rodríguez has also been able to discuss the defendant's medical predicament with his treating physicians.

Deputy Rodríguez stated[2] that the defendant still suffers from partial paraplegia; is unable to walk; and, remains in a lying position. He needs assistance for his personal hygiene, and is frequently in pain from his wounds.[3] He further stated that the defendant's appearance has not changed much from that of the photographs (defendant's Exhibits A, B, C and D), which were taken approximately one month ago. The wound in defendant's buttock is approximately the size of Deputy Rodríguez' closed fist. The defendant is improving slowly and also has a loss of functions in his arms.

From an administrative perspective, Deputy Rodríguez stated that the Federal Bureau of Prisons will not accept the defendant until his wounds are totally closed.

---

1. The defendant was not present at this hearing, still being confined to his hospital bed, under the custody of the U.S. Marshal Service.

2. Deputy Marshal Rodríguez was called to testify by the Court, acting *motu propio,* in order to ascertain a complete picture of defendant's physical state.

3. The defendant is presently taking painkilling medication, and, as a consequence, is not lucid at times. For example, following the detention hearing, it was the Court's intention to arraign him over the telephone, while accompanied by a member of the Public Defender Office. The proceeding, however, could not be conducted, as defendant was completely disoriented.

Consequently, the Marshal Service must pay for the services of four contracted security guards on a daily basis to supervise the defendant; an additional guard is required on those days when the defendant's family is allowed to visit him.

Notwithstanding the defendant's apparent dangerousness in this case, his present physical condition is indeed grave and can deteriorate if not carefully treated. At present, the Bureau of Prisons cannot provide the necessary medical care defendant requires. Because of this, the Marshal Service is presently paying for the defendant's medical care, as well as for his daily supervision.

Under the unique circumstances present in this particular case, the Court understands that conditions of release exist which permit the defendant to be treated by his family members, and at the same time not pose any threat to the community. *See, e.g., United States v. Scarpa,* 815 F.Supp. 88, 92–93 (E.D.N.Y.1993) (defendant charged with racketeering, conspiracy and murder, who sustained gunshot wound that destroyed his left eye and surrounding area of his face and skull, and was also terminally ill with AIDS virus, was released from custody on condition that he be confined at hospital, which could provide care prison medical facilities could not provide). *See also Ex Parte Goldsby,* 121 Miss. 479, 83 So. 673 (1920) (court ordered defendant released on bond under modified conditions where his health was endangered by confinement). The Court's holding is limited to the extraordinary facts of this case, and, in the future, should not be considered *carte blanche* by any injured or ailing defendant as a basis for arguing his or her pretrial release.

In the case at bar, the Court understands that the defendant may be released under the custody of his mother and grandmother and remain at a medical facility or under 24–hour house arrest at his grandmother's apartment. Upon an earlier order made by the Court, U.S. Pretrial Services officer Angel L. Meaux–Pereda interviewed these relatives and found them fit to serve as defendant's custodians. *See Motion Informing Outcome of Third–Party Custodian Candidates' Investigation* (Docket No. 13). Defendant's mother and grandmother, as well as several relatives who are professional nurses, can indeed take care of defendant's medical needs. *See id.* The Court, at the detention hearing also questioned the defendant's mother and grandmother in order to further ascertain whether they indeed qualify as third-party custodians. Both individuals, particularly the grandmother, were convincingly credible in their representation to the Court.

The Court remains extremely cognizant of the government's concern that the defendant will return to temporarily reside at the very housing project where the shootout took place. However, the Court understands that the conditions of release set forth below reasonably guarantee the safety of the community. The Court at this time also does not consider the defendant to pose a risk of flight.

**WHEREFORE**, the Court hereby **ORDERS** that:

1) The defendant be released from the custody of the U.S. Marshal to the joint custody of his mother and grandmother.

2) The defendant remain at a medical facility or at his grandmother's apartment under twenty four (24) hour house arrest, except to attend medical appointments and meet with the Federal Public Defender.

3) The defendant shall wear an electronic monitoring bracelet.

4) The defendant's relatives who will act as his custodians shall sign an unsecured bond in the amount of $25,000.

5) The Federal Public Defender shall file with the Court bi-weekly medical updates regarding the defendant's medical condition.

6) The defendant shall comply with any other condition of release set by the Pretrial Services Office.

Should the defendant's condition drastically improve, the Government may move once again for detention, should it understand that the community is endangered by defendant's presence, or that defendant poses a flight risk.

This order shall go into effect on **Tuesday, January 15, 2002 at 1:00 p.m.** unless the Government, pursuant to 18 U.S.C. § 3145(b) seeks review of this order. Should the Government pursue this course of action, this order shall be automatically **STAYED**.

**SO ORDERED**.